# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Pinnacle Regional Hospital, Inc., | ) | Case No. 20-20219 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| Pinnacle Regional Hospital, LLC, | ) | Case No. 20-20221 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| Blue Valley Surgical Associates, LLC, | ) | Case No. 20-20222 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| Pinnacle Health Care System, Inc., | ) | Case No. 20-20224 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## EMERGENCY MOTION OF GREAT WESTERN BANK FOR IMMEDIATE APPOINTMENT OF CHAPTER 11 TRUSTEE

Great Western Bank ("Great Western") moves the Court, on an emergency basis, for the

immediate appointment of a chapter 11 trustee to replace the management of Pinnacle Regional

Hospital, Inc. ("Pinnacle Hospital OP"), Pinnacle Regional Hospital, LLC ("Pinnacle Hospital

Boonville"), Blue Valley Surgical Associates, LLC ("BVSA"), Pinnacle Health Care System, Inc.

("Pinnacle Health"), and Blue Valley Health Care System, Inc. ("Blue Valley Health," and

collectively, the "Debtors") in these bankruptcy cases. Debtors have consented to the appointment of a chapter 11 trustee.

## Introduction

As explained in more detail herein, during the pendency of these bankruptcy cases, the Debtors violated the Bankruptcy Code and the Court's orders governing the use of cash collateral. Specifically, the Debtors spent, without Court authority or consent of Great Western, cash collateral originating with Pinnacle Hospital Boonville in the approximate amount of $1.3 million -- nearly $800,000 more than was approved -- during the time period of February 12, 2020 through March 12, 2020. Next, with no authority from the Court and no agreement from Great Western, the Debtors commingled all cash collateral originating with Pinnacle Hospital Boonville, Pinnacle Hospital OP, and BVSA into an account titled in the name of Pinnacle Health. All, or substantially all, spending that has taken place by the Debtors since the outset of these bankruptcy cases took place from Pinnacle Health's account. The Debtors have not sought Court permission to consolidate their finances in this manner and have not sought Court permission for Pinnacle Health to spend cash collateral at all. Indeed, Pinnacle Health is not even referenced in the Debtors' cash collateral motions. This consolidation of the Debtors' finances makes reconciliation of their revenues and spending against their cash collateral budgets impossible. Viewing their spending in the aggregate, however, the trend is clear: Debtors have not complied with their Court-approved budgets and this Court's orders.

In addition, Debtors spent approximately $78,415 on prepetition wages of physicians that previously worked at Pinnacle Hospital Boonville (a now shuttered hospital). Because this entity is not presently offering any medical services, physicians' wages were specifically excluded from Pinnacle Hospital Boonville's operating budgets. Debtors paid them anyway.

2

WA 14514338.3

The full scope of Debtors' inappropriate operations recently became clear to Great Western, primarily from materials provided to Great Western by the Debtors. These materials will be discussed herein. Even in spite of the clear violations of the Court's orders, Great Western was prepared to allow the Debtors to remain operating for two additional weeks while it evaluated its options. However, after reaching what Great Western thought was a two week extension of the "status quo" budgets Debtors had previously proposed, Debtors proceeded to submit "revised" budgets for BVSA and Pinnacle Hospital Boonville that were inexplicably over three times higher than their first two interim budgets. Debtors' explanations for these threefold increases were insufficient to justify the expanded budgets, and Great Western had no choice but to withhold its consent to further use of cash collateral.

Debtors' present operational management has also struggled to maintain and provide accurate reporting. Five weeks into the filing of these cases, Debtors have been unable to provide Great Western with accurate, reliable records regarding the present state of its accounts receivable, which constitute Great Western's collateral. Debtors have also failed to file their schedules and statements of financial affairs. Given these various issues, the appointment of a chapter 11 trustee is necessary to preserve the value of the Debtors' bankruptcy estates.

In further support of the Motion, Great Western states as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein include Section 1104 of the Bankruptcy Code.

## Background

3.     Pinnacle Hospital OP operates a hospital located in Overland Park, Kansas that specializes in bariatric surgery and intervention services.

4.     BVSA operates clinics in Kansas and Missouri that offer pain management, surgical work-up and follow-up for bariatric, orthopedic and spinal patients.

5.     Pinnacle Hospital Boonville previously operated a hospital in Boonville, Missouri. Pinnacle Hospital Boonville ceased operating the hospital in January 2020.

6.     Pinnacle Health is a holding company and is the sole member of Pinnacle Hospital Boonville.  Pinnacle Health has no operational functions.

7.     Blue Valley Health is an entity previously engaged in transporting patients to the Debtors' other facilities. In its petition, Pinnacle Hospital OP listed Blue Valley Health as a former name of Pinnacle Hospital OP, but this is incorrect. Blue Valley Health is a separate entity apart from Pinnacle Hospital OP. To the extent Blue Valley Health is under the Court's jurisdiction, the Court should appoint a chapter 11 trustee over Blue Valley Health.

8.     Douglas Palzer is the beneficial owner of all of the Debtors.

**A.     Loans to Pinnacle Hospital OP and BVSA**

9.     Beginning in August 2017, Great Western made several loans (the "Blue Valley Loans") to Pinnacle Hospital OP, BVSA, and Blue Valley Health (collectively, the "Blue Valley Borrowers"). Specifically, Great Western made the following loans to the Blue Valley Borrowers:

a.     On or about August 25, 2017, Great Western extended a line of credit (the "LOC") to the Blue Valley Borrowers in the original principal amount of $10,000,000, which was subsequently increased to $12,000,000;

b.     On or about August 25, 2017, Great Western extended a loan ("5/7 Year Loan") to the Blue Valley Borrowers in the original principal amount of $1,805,000;

4

WA 14514338.3

     c.       On or about August 25, 2017, Great Western extended a loan ("4 Year Loan") to the Blue Valley Borrowers in the original principal amount of $210,000;

     d.       On or about August 25, 2017, Great Western extended a loan ("5/8 Year Loan," and together with the LOC, the 5/7 Year Loan, and the 4 Year Loan, the "8/25/17 Loans") to the Blue Valley Borrowers in the original principal amount of $1,380,000;

     e.       On or about April 16, 2018, Great Western extended a loan ("4/16/18 Term Loan") to the Blue Valley Borrowers in the original principal amount of $669,000; and

     f.       On or about December 17, 2018, Great Western extended a loan ("12/17/18 Term Loan") to the Blue Valley Borrowers in the original principal amount of $1,768,800.

*See* Declaration of Peter Jardine, attached hereto as Exhibit A ¶ 3 (the "Jardine Declaration").

     10.     The Blue Valley Loans are evidenced by certain documents, including the following:

     a.       Promissory Note dated August 25, 2017 in the original principal amount of $10,000,000, which has been subsequently modified to $12,000,000;

     b.       Promissory Note dated August 25, 2017 in the original principal amount of $1,805,000;

     c.       Promissory Note dated August 25, 2017 in the original principal amount of $210,000;

     d.       Promissory Note dated August 25, 2017 in the original principal amount of $1,380,000;

     e.       Promissory Note dated April 16, 2018 in the original principal amount of $669,000;

     f.       Promissory Note dated December 17, 2018 in the original principal amount of $1,768,800;

     g.       Loan Agreement dated August 25, 2017;

     h.       Loan Modification Agreement dated August 29, 2018;

     i.       Second Loan Modification Agreement dated October 3, 2018;

     j.       Third Loan Modification Agreement dated September 30, 2019;

5

WA 14514338.3

> k.  Security Agreement dated August 25, 2017;
>
> l.  Loan Agreement dated April 16, 2018;
>
> m.  Security Agreement dated April 16, 2018; and
>
> n.  Security Agreement dated December 17, 2018.

True and correct copies of the promissory notes, loan agreements, and loan modifications evidencing the Blue Valley Loans are attached as Exhibits 1-11 to the Jardine Declaration. *See* Jardine Declaration ¶¶ 4-5.

11.  On or about October 25, 2018, Pinnacle Hospital OP entered into a certain Business Purchasing Card Agreement & Setup form (the "Credit Card Agreement"). Jardine Declaration ¶ 6; A true and correct copy of the Credit Card Agreement is attached to the Jardine Declaration as Exhibit 12. Jardine Declaration ¶ 7.

12.  In exchange for the Credit Card Agreement and as evidenced therein, Great Western extended a credit card account to Pinnacle Hospital OP with a maximum credit limit of $2,000,000.00 (the "Credit Card"). Jardine Declaration ¶ 8.

13.  To secure the indebtedness they owe to Great Western, the Blue Valley Borrowers executed security agreements (collectively, the "OP Security Agreements") dated August 25, 2017, April 16, 2018, and December 17, 2018.  Jardine Declaration ¶ 9. True and correct copies of the OP Security Agreements are attached to the Jardine Declaration as Exhibits 13-15. Jardine Declaration ¶ 10.

14.  The OP Security Agreements conveyed a security interest in all of the Blue Valley Borrowers' personal property, including, but not limited to, accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by the Blue Valley Borrowers), securities and certificates of deposit, deposit accounts and letter of credit rights;

6

WA 14514338.3

inventory; furniture and equipment; and fixtures. (collectively, the "OP Collateral"). Jardine Declaration ¶ 11; Exhibits 13-15 attached to the Jardine Declaration.

15.     Great Western has properly perfected its interest in the OP Collateral by filing a financing statement with the Kansas Secretary of State and having its lien noted on the titles of certain equipment. Jardine Declaration ¶ 12. True and correct copies of the financing statements are attached as Exhibit 16 to the Jardine Declaration. Jardine Declaration ¶ 13.

16.     The August 25, 2017 Blue Valley Borrower Loans were guaranteed by Pinnacle Health, Pinnacle Hospital Boonville, and Douglas Palzer. Jardine Declaration ¶ 14. True and correct copies of the Pinnacle Health and the Pinnacle Hospital Boonville guaranties are attached to the Jardine Declaration as Exhibits 17-18. Jardine Declaration ¶ 16.

**B.     Loan to Pinnacle Health**

17.     On or about October 3, 2018, Great Western made a loan ("Pinnacle Health Loan," and together with the "Blue Valley Loans," the "Loans") to Pinnacle Health in the original principal amount of $6,500,000. Jardine Declaration ¶ 17.

18.     The Pinnacle Health Loan is evidenced by certain documents, including the following:

   a.     Promissory Note dated October 3, 2018 in the original principal amount of $6,500,000;

   b.     Loan Agreement dated October 3, 2018;

   c.     Security Agreement dated October 3, 2018; and

   d.     Deed of Trust dated October 3, 2018.

Jardine Declaration ¶ 18. True and accurate copies of the promissory note and loan agreement are attached to the Jardine Declaration as Exhibits 19-20. Jardine Declaration ¶ 19.

7

WA 14514338.3

19.     The Pinnacle Health Loan was guaranteed by Pinnacle Hospital OP, BVSA, Blue Valley Health, Pinnacle Hospital Boonville, Joy's Majestic Paradise, Inc., Rojana Realty Investment, Inc., and Douglas Palzer. Jardine Declaration ¶ 20. True and correct copies of Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville's guaranties are attached to the Jardine Declaration as Exhibits 21-23. Jardine Declaration ¶ 21.

20.     To secure the indebtedness to Great Western, Pinnacle Hospital Boonville executed a security agreement (the "Boonville Security Agreement") dated October 3, 2018, among other loan and security documents.  Jardine Declaration ¶ 22. A true and accurate copy of the Boonville Security Agreement is attached to the Jardine Declaration as Exhibit 24. Jardine Declaration ¶ 23.

21.     The Boonville Security Agreement conveyed a security interest in all of the Boonville Hospital's personal property, including, but not limited to, accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by Pinnacle Hospital Boonville), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures (collectively, the "Boonville Collateral"). Jardine Declaration ¶ 25; Exhibit 24 to Jardine Declaration.

22.     Great Western properly perfected its interest in the Boonville Collateral by filing a financing statement with the Delaware Secretary of State.  Jardine Declaration ¶ 25. A true and accurate copy of the financing statement is attached to the Jardine Declaration as Exhibit 25. Jardine Declaration ¶ 26.

23.     On or about October 3, 2018, Pinnacle Hospital Boonville executed the deed of trust, security agreement, assignment of leases and rents and fixture filing statement (the

WA 14514338.3

"Boonville Deed of Trust"). Jardine Declaration ¶ 27. A true and correct copy of the Deed of Trust is attached to the Jardine Declaration as Exhibit 26. Jardine Declaration ¶ 28.

24.     The Boonville Deed of Trust secures repayment of the Secured Indebtedness (as defined in the Boonville Deed of Trust) and conveyed an interest in certain real and personal property described in the Boonville Deed of Trust, including certain real property located in Cooper County, Missouri (the "Cooper County Property," and together with the OP Collateral and the Boonville Collateral, the "Collateral"). Jardine Declaration ¶ 29.

25.     Great Western perfected its security interest in the Cooper County Property by recording the Boonville Deed of Trust with the Recorder of Deeds for Cooper County, Missouri. Jardine Declaration ¶ 30.

**C.     Pre-Petition Management**

26.     From 2015 through April 11, 2018, Pinnacle Hospital OP was certified by the Centers for Medicare and Medicaid Services ("CMS") as a hospital provider.  *See Blue Valley Hospital, Inc. v. Azar*, 919 F.3d 1278, 1282 (10th Cir. 2019).

27.     To be classified as a hospital provider under the Medicare and Medicaid programs, a provider must be primarily engaged in providing care to inpatients.  CMS, through the Kansas Department of Health and Environment, surveyed Pinnacle Hospital OP in November 2017.  In February 2018, CMS notified Pinnacle Hospital OP that it did not meet the two-night average length of stay requirement to meet the conditions of participation for hospitals.  *Id.*

28.     On March 27, 2018, CMS sent Pinnacle Hospital OP a notice that CMS was terminating Pinnacle Hospital OP's provider agreement as of April 11, 2018.  As a result of this termination, Pinnacle Hospital OP is precluded from receiving payments under the Medicare and Medicaid programs as a hospital provider.  *See id.* at 1282-83 & n.1.

9

WA 14514338.3

29.     Pinnacle Hospital OP filed suit against CMS and the U.S. Department of Health and Human Services to contest CMS's decision to terminate Pinnacle Hospital OP's provider agreement, but the District of Kansas dismissed the case for lack of subject matter jurisdiction. That decision was affirmed by the Tenth Circuit. *See id.* at 1281-82.

30.     Debtors faced another setback in June 2019 when the Debtors were subject to a ransomware attack which left them unable to process claims for a four week period.  Jardine Declaration ¶ 31.

31.     Debtors informed Great Western that Medicaid also reduced Medicaid reimbursements in 2019 by forty percent for some services, including bariatric services.  Jardine Declaration ¶ 32.

32.     Following these and other setbacks, Debtors began to have difficulty paying their vendors.  For instance, according to an accounts payable report submitted by Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville to Great Western, as of August 31, 2019, these entities had accounts payable of approximately $10,500,000, of which approximately $7,500,000 were aged over ninety days.  Jardine Declaration ¶ 34. Vendors of the Debtors also filed collection suits.  Jardine Declaration ¶ 35.

33.     Throughout 2019 and continuing through the present, Debtors also failed to pay Great Western, and Pinnacle Hospital OP became past due on the Credit Card.  Jardine Declaration ¶ 36.

34.     Great Western met with the Debtors on or about September 12, 2019 to discuss a plan for repayment of the balance of the Credit Card, which was approximately $1.9 million at that time.  Jardine Declaration ¶ 37. Great Western and the Blue Valley Borrowers also discussed the

10

WA 14514338.3

upcoming maturity date of the LOC Note, which was set to mature on September 30, 2019.  Jardine Declaration ¶ 38.

35.    Great Western and the Debtors discussed the terms of a workout throughout September 2019.  Jardine Declaration ¶ 39. On September 30, 2019, counsel for the Debtors represented to counsel for Great Western that they agreed to the terms of the workout agreement, including by converting the balance of the Credit Card to a secured note.  Jardine Declaration ¶ 40. Based on the Debtors' and their counsel's representations regarding their agreement to the proposed workout, Great Western agreed to extend the maturity date on the LOC from September 30, 2019 to September 30, 2020.  Jardine Declaration ¶ 41.

36.    Great Western and the Debtors exchanged draft documents to effectuate the September 30, 2019 agreement.  Jardine Declaration ¶ 42. The Debtors ceased communications by the middle of October 2019, and the Debtors did not complete the documents necessary to effectuate the work out of the Credit Card.  Jardine Declaration ¶ 43.

37.    Based on borrowing base certificates submitted on behalf of the Blue Valley Borrowers and Pinnacle Hospital Boonville to Great Western, as of June 30, 2019, August 31, 2019, and September 30, 2019, Eligible Accounts declined precipitously from $43,921,922 on June 30, 2019, to $31,978,770 on August 31, 2019, and then to $24,683,883 on September 30, 2019.  Jardine Declaration ¶ 44.

### D.    Failure to Provide Information and Payment Defaults

38.    The various loan agreements require that the Debtors provide financial information to Great Western.  The Debtors have failed to satisfy these reporting requirements.  Jardine Declaration ¶ 45.

39.    The Debtors also failed to make payments on the Loans when due.  On December 13, 2019, Great Western sent a default letter to Debtors demanding payment of the total

11

WA 14514338.3

amount past due at that time. Jardine Declaration ¶ 47. On December 26, 2019, Great Western sent Debtors an acceleration letter and demanded immediate repayment of the total outstanding indebtedness owed on the Loans. Jardine Declaration ¶ 48.

40.     The Debtors failed to repay the Loans after acceleration, and Great Western stopped permitting advances under the LOC. Jardine Declaration ¶ 49.

41.     On January 15, 2020, a class action was filed against Pinnacle Health, alleging that Pinnacle Health withheld funds from employees' paychecks for health insurance premiums but failed to pay the insurance premiums. *See Carmichael et al. v. Pinnacle Health Care System, Inc.*, Case No. 20CO-CC0005, Cooper County, Missouri.

42.     Pinnacle Hospital Boonville also faced regulatory issues in January 2020, as Missouri regulators ordered Pinnacle Hospital Boonville that it had to stop performing surgeries due to issues with its sterile processing procedures.[1] Pinnacle Hospital Boonville voluntarily closed in January 2020.

### E.     Bankruptcy Filings and Post-Petition Management

43.     On February 12, 2020, each Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each Debtor remains in possession of its property and in control of its affairs pursuant to 11 U.S.C. §§ 1107 and 1108.

44.     On February 12, 2020, Great Western filed its Notice of Non-Consent to Unauthorized Use of Cash Collateral in each Debtor's case.

45.     On February 14, 2020, Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville each filed a Motion for Authorization to Use Operating Revenues and Request for

---

[1] https://www.kcur.org/post/pinnacle-regional-hospital-boonville-missouri-shuts-down-operations#stream/0

WA 14514338.3

Expedited Scheduling of Preliminary and Final Hearings (collectively, the "Motions"). On February 28, 2020, the Court entered an Agreed Interim Order (I) Authorizing Use of Cash Collateral, (II) Authorizing Approval of Prepetition Payroll, and (III) Granting Adequate Protection in each of the OP, BVSA, and Pinnacle Hospital Boonville's cases (collectively, the "First Interim Orders"). The First Interim Orders granted Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville the authority to use its Cash Collateral for the expenses listed in its respective budget until March 3, 2020.

46. On March 4, 2020, the Court entered the Agreed Second Interim Order: (I) Authorizing Use of Cash Collateral; and (II) Granting Adequate Protection in OP, BVSA, and Pinnacle Hospital Boonville's cases (collectively, the "Second Interim Orders"). The Second Interim Orders granted OP, BVSA, and Pinnacle Hospital Boonville the authority to use its Cash Collateral for the expenses listed in its respective budget until March 17, 2020.

47. Debtors failed to comply with the budgets agreed to under the Interim Orders. On March 16, 2020, Debtors provided initial information on Pinnacle Hospital Boonville's spending, which was supplemented on or about March 22, 2020. Copies of these reports are attached to the Jardine Declaration as Exhibits 27 through 29. Jardine Declaration ¶¶ 56, 63. Debtors' report demonstrates that Debtors have exceeded approved spending for Pinnacle Hospital Boonville in two fundamental ways.

48. First, Debtors exceeded spending on operations for Pinnacle Hospital Boonville.

    a.    The First and Second Interim Orders approved spending for Pinnacle Hospital Boonville spending at $137,024 for the first interim period and $132,881 for the second interim period, for total approved operational spending of $269,905. *See* Docs. 24 & 33 in Case No. 20-20221. Debtors also made adequate protection payments during the first and second interim periods to Great Western in the amount of $274,048 from Pinnacle Hospital Boonville, which was contemplated by the First and Second Interim Orders.

13

WA 14514338.3

Thus, total operational spending and adequate protection spending should have been limited to $543,953.

    b.    Debtors' actual operational spending on Pinnacle Hospital Boonville, according to their materials provided to Great Western was $453,740 (exceeding their approved operational budgets by $183,835). Jardine Declaration ¶ 64.

    c.    More importantly, however, the Debtors spent, without Court authority or consent of Great Western, additional cash collateral originating with Pinnacle Hospital Boonville. Their materials indicate that $1,335,364 in total was transferred from Pinnacle Hospital Boonville to Pinnacle Health and subsequently spent on unknown operational expenses of the Debtors. Jardine Declaration ¶ 65. Thus, Debtors utilized $791,411 of Pinnacle Hospital Boonville cash collateral without authority to do so.

49.     Second, without court authorization, Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville systematically transferred substantially all cash received to Pinnacle Health. Deposits were also made directly to the Pinnacle Health deposit account for services provided by Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville, but it is not clear which Debtor provided the underlying service. Jardine Declaration ¶¶ 66-67. Debtors then debited the Pinnacle Health account, but it is not possible to determine which withdrawals are for which debtor based on the bank records provided. Jardine Declaration ¶ 68. All, or substantially all, spending that has taken place by the Debtors since the outset of these bankruptcy cases took place from Pinnacle Health's account. Jardine Declaration ¶¶ 69. The Debtors have not sought Court permission to consolidate their finances in this manner and have not sought Court permission for Pinnacle Health to spend cash collateral at all. Indeed, Pinnacle Health is not even referenced in the Debtors' cash collateral motions. This improper consolidation of the Debtors' finances makes reconciliation of their revenues and spending against their budgets impossible.

50.     Notably, Debtors spent $78,415 in pre-petition payments to physicians for Boonville Hospital OP, a shuttered hospital. Exhibit A30. The budgets attached to the Interim

14

WA 14514338.3

Orders provided a line item of $0 allocated to physician contract pay. Docs. 24 & 33 in Case No. 20-20221.

51.     It also appears that Debtors spent funds from Pinnacle Hospital Boonville for the benefit of Pinnacle Hospital OP. On March 16, 2020, Debtors met with Great Western and provided certain information about Debtors' collections to Great Western. Jardine Declaration ¶¶ 54-55. Based on those collections numbers, it would not have been possible for Pinnacle Hospital OP to make all payments in its budget without transferring funds from another Debtor.

52.     In the Interim Orders, Pinnacle Hospital OP had budgeted revenue from February 12, 2020 through March 17, 2020 of $2,314,017 and expenses of $1,797,329. Docs. 28 and 38 in Case No. 20-20219. As of March 12, 2020, Pinnacle Hospital OP had only collected $723,754.90, approximately $1 million less than the funds necessary to pay Pinnacle Hospital OP's budgeted expenses. Exhibit A27.

53.     During the Second Interim Period, Great Western dispatched a team of auditors to the Debtors to ascertain the state of the Debtors' accounts receivable. Jardine Declaration ¶ 50. These auditors, however, have not been provided adequate data in order to verify Great Western's collateral position. Jardine Declaration ¶ 51.

54.     Debtors and Great Western had reached a tentative agreement for the use of cash collateral for a third interim period, but reached an impasse when Debtors provided proposed budgets that were substantially out of line with the budgets for the First Interim Order and Second Interim Order. Jardine Declaration ¶¶ 57-60. Copies of the proposed budgets are attached to the Jardine Affidavit as Exhibit 29.

55.     The "revised" budgets for BVSA and Pinnacle Hospital Boonville were inexplicably over three times higher than their first two interim budgets. Debtors' explanations

15

for these threefold increases were insufficient to justify the expanded budgets, and Great Western had no choice but to withhold consent to further use of cash collateral.

56.     Debtors have also failed to comply with the reporting requirements in the Interim Orders.  In the First Interim Orders, Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville were required to provide various information to Great Western by February 26, 2020.  Doc. 28 in Case No. 20-20219; Doc. 24 in Case No. 20-20221; Doc. 25 in Case No. 20-20222.  Debtors did not provide all of this information within the time required in the First Interim Orders.  Jardine Declaration ¶ 52.  In the Second Interim Orders, Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville were required to provide updated accounts receivable and accounts payable reports by March 11, 2020. Doc. 38 in Case No. 20-20219; Doc. 33 in Case No. 20-20221; Doc. 34 in Case No. 20-20222.  Debtors did not provide this information within the time required in the Second Interim Orders.  Declaration ¶ 53.

57.     As of the date hereof, Debtors have failed to file schedules or their statements of financial affairs.  The Court has requested that the Debtors file a motion for joint administration. To date, the Debtors have failed to follow this directive.

58.     Debtors appear to have hired attorneys without seeking approval of their employment as required under 11 U.S.C. § 327.  For instance, Mr. Jonathan Margolies has filed disclosures of compensation in the Pinnacle Health bankruptcy case, but has failed to seek employment in that case.

**Relief Requested**

59.     Great Western requests that the Court appoint a chapter 11 trustee to manage Debtors' remaining business and affairs pursuant to Section 1104(a) of the Bankruptcy Code. Section 1104(a) of the Bankruptcy Code provides, in pertinent part, as follows:

16

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

> (1)      for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . or

> (2)      if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . ..

11 U.S.C. § 1104(a). A finding of "cause" under Section 1104(a)(1) mandates the appointment of a trustee, while the test under subsection (a)(2) allows the Court to appoint a trustee based upon the practicalities of the case and is therefore more subjective.[2] Regardless of which subsection the Court looks to, however, the Debtors' incompetence and gross mismanagement provides adequate justification for the appointment of a chapter 11 trustee.

60.    Whether "cause" exists under Section 1104(a)(1) "is vested in the court's discretion and will be reviewed under an abuse of discretion standard." *In re Celeritas Technologies, LLC*, 446 B.R 514, 518 (Bankr. D. Kan. 2011). The court is vested with even broader discretionary powers under § 1104(a)(2) and may consider equitable factors to determine whether a trustee is in the best interests of the estate and its creditors." *Id.*

**A.    Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(1) of the Bankruptcy Code.**

61.    Section 1104(a)(1) mandates the appointment of a chapter 11 trustee where "cause" exists. Although Section 1104(a)(1) expressly identifies four bases upon which "cause" may be found -- "fraud, dishonesty, incompetence or gross mismanagement" -- the list is not exhaustive

---

[2] Notwithstanding the fact that these tests are more subjective, if the requirements of the test are met then appointment of a trustee is mandated. *See Sims v. Sims (In re Sims)*, 226 B.R. 284 (10th Cir. BAP 1997).

17

WA 14514338.3

and the Court may find that "cause" exists for reasons other than those specified in the statute. *See, e.g.*, *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d. Cir. 1989); *In re Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 174 (Bankr. D. Colo. 1990).

62.     Failure to comply with the Bankruptcy Code and the Court's orders constitutes "cause" under Section 1104(a)(1).  For example, in *In re AG Service Centers, L.C.*, the Debtor failed to timely provide reporting to the secured creditor as required by the interim cash collateral orders, exceeded the authorized expenditures in cash collateral budget, failed to file operating reports, and failed to seek Court approval for the employment of professionals.  *In re AG Serv. Cntrs., L.C.*, 239 B.R. 545, 548-50 (Bankr. W.D. Mo. 1999).  The Court was particularly concerned about the failure to comply with reporting requirements in the Bankruptcy Rules and in the Court's cash collateral orders, explaining that one "of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization . . . ." *Id.* (quoting *In re Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)).

63.     Relatedly, the "failure to keep adequate records and make prompt and complete reports justifies the appointment of a trustee." *In re Oklahoma Refining Co.*, 838 F.2d 1113, 1136 (10th Cir. 1988).

64.     Here, Debtors have failed to follow the Court's orders and the Bankruptcy Rules. Debtors have failed to timely comply with the reporting requirements in the Interim Orders. Debtors have commingled funds and exceeded their authorized spending, including making unauthorized pre-petition payments for a closed hospital.  Debtors have failed to seek employment of individuals who appear to be acting as professionals for the estate.  Debtors have failed to file

18

WA 14514338.3

schedules or statements of financial affairs, despite the requirement under Bankruptcy Rule 1007 to file these documents within fourteen days of the petition.  Bankruptcy Rule 1007(c).

65.     Moreover, the Debtors' records are not adequate.  The auditors hired by Great Western to evaluate the Debtors' accounts receivable were unable to determine the state of Great Western's collateral given the poor state of Debtors' records.

66.     The Debtors' actions both pre- and post-petition constitute "cause," requiring the appointment of a trustee.  *See Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) ("[o]nce the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee").

**B.      Appointment of a Chapter 11 Trustee is in the Best Interest of Creditors Pursuant to Section 1104(a)(2) of the Bankruptcy Code.**

67.     Although the Court may rest its decision that appointment of a chapter 11 trustee is warranted solely under Section 1104(a)(1) because "cause" exists as a result of Debtors' incompetence and gross mismanagement, appointment of a trustee under Section 1104(a)(2) is appropriate as well.

68.     Section 1104(a)(2) of the Bankruptcy Code sets forth a "best interest of creditors" test that emphasizes a court's broad equity powers to engage in a cost-benefit analysis in making the decision whether the appointment of a trustee is appropriate.  The factors to be considered under Section 1104(a)(2) of the Bankruptcy Code are:

(1)     the trustworthiness of the debtor;

(2)     the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation;

(3)     the confidence or lack thereof of the business community and of creditors in present management; and

(4)     the benefits derived by the appointment of a trustee, balanced against the cost of appointment.

19

WA 14514338.3

*In re Colorado-Ute Elec. Ass'n*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990).

69.     Numerous courts have appointed a trustee relying solely on the "best interests" test. *See, e.g., In re Microwave Prods. Of Am., Inc.*, 102 B.R. 666, 676-77 (Bankr. W.D. Tenn. 1989); *In re L.S. Good & Co.*, 8 B.R. 312, 315 (Bankr. N.D. W.Va. 1980).  Such a finding is appropriate where the "practical realities" of the case merit the appointment.  *See In re Euro-Am. Lodging Corp.*, 365 B.R. at 428 ("§ 1104(a)(2) reflects the practical reality that a trustee is needed").

70.     Every factor in this case weighs in favor of the appointment of a chapter 11 trustee. Great Western has lost confidence in the Debtors' trustworthiness given their complete failures to abide by the cash collateral budgets and their commingling of Debtors' funds.  Prior to the bankruptcy filing, Debtors also failed to comply with the reporting requirements they agreed to in the loan documents with Great Western.  After defaulting and reaching a putative agreement to resolve some of the issues, Debtors went months without responding to Great Western.  While Debtors' communication has improved post-petition, Debtors continue to fail to timely provide accurate, transparent information about Great Western's collateral.  Based on the Debtors' performance to date, collections are insufficient to cover even minimal operation expenses. Moreover, Pinnacle Hospital Boonville has ceased operations.  Without oversight, the lack of transparency is sure to continue.

71.     Accordingly, the benefits derived from an appointment of a trustee far outweigh the costs of such appointment and the appointment of a chapter 11 trustee is clearly in the "best interest" of creditors.  Moreover, Debtors have consented to the appointment of a chapter 11 trustee.

WA 14514338.3

**Notice**

72.    Contemporaneously with this motion, Great Western is filing a motion to limit notice. The Court has set a telephonic hearing on this matter for March 27, 2020 at 1:30 p.m., and Great Western requests that any objections to the Motion be filed by March 27, 2020 at 1:30 p.m.

**CONCLUSION**

73.    In light of Debtors' inability to comply with the Court's orders, the Bankruptcy Code, and the Bankruptcy Rules, and the Debtor's consent to the appointment of a trustee, this Court should appoint a trustee to administer the affairs of the Debtors. The Court has the authority to do so under Sections 1104(a)(1) and 1104(a)(2). The appointment of an independent trustee will benefit the Debtors' estates and creditors.

**WHEREFORE**, Great Western respectfully requests that the Court appoint a Chapter 11 trustee, and grant such additional relief as the Court deems appropriate in the circumstances.

Respectfully submitted,

SPENCER FANE LLP

By: /s/ Peter L. Riggs
_____
Peter L. Riggs                  KS #23523
Andrea M. Chase           KS #26307
1000 Walnut St., Suite 1400
Kansas City, Missouri 64106-2140
Phone: 816-474-8100
Facsimile: 816-474-3216
Email: priggs@spencerfane.com
        achase@spencerfane.com

ATTORNEYS FOR GREAT WESTERN BANK

21

WA 14514338.3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 26, 2020, the foregoing was served electronically upon those parties receiving electronic notification through the Court's CM/ECF system.

/s/ Peter L. Riggs
An Attorney for Great Western Bank

22

WA 14514338.3