**SO ORDERED.**

**SIGNED this 1st day of December, 2020.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use, but not print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**Pinnacle Regional Hospital, Inc., et al.,**

                      **Debtors.**

Case No. 20-20219
Chapter 7
(Jointly Administered)

## Memorandum Opinion and Judgment
## Ruling on Centinel Spine, LLC's
## Motion for Resolution of Disputed Chapter 7 Trustee Elections

At the request of unsecured creditors, the United States Trustee ("UST")

conducted elections for a Chapter 7 Trustee under 11 U.S.C. § 702[1] in three of

these six jointly administered cases. The UST's notice of disputed election[2]

---

[1] Future references in the text to title 11 shall be identified by section number only.

[2] Doc. 495.

concluded that Larry Pittman had been elected Chapter 7 Trustee in one case, Pinnacle Regional Hospital, LLC, and that there was not the requisite election quorum in the other two cases such that James Overcash, the Interim Chapter 7 Trustee, should be deemed the Chapter 7 Trustee in those two cases. Unsecured creditor Centinel Spine, LLC ("Centinel") moved for resolution of the disputed election. Partially secured creditor, Great Western Bank ("the Bank"), whose unsecured claims greatly exceed the aggregate of the other unsecured claims in each of the relevant cases, responded. The interested parties unanimously declined to request an evidentiary hearing. The motion is therefore being decided on the briefs, following oral argument.[3] For the following reasons, the Court rules that the UST election results are correct.

## I.  Controlling Statute and Rules

Election of a Chapter 7 Trustee is governed by § 702. Summarized, that section provides the following:

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2018). A motion for determination of disputed election is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

(1) An unsecured creditor is eligible to vote if (a) it has a nonpriority claim that is "allowable, undisputed, fixed, and liquidated" entitled to distribution under §§ 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 726i); (b) it does not have an interest materially adverse to other unsecured creditors; and (c) is not an insider.

(2) An election may be held at the meeting of creditors if requested by at least 20% **in amount** of the holders of eligible unsecured creditors (quorum requirement).

(3) A candidate is elected if (a) at least 20% **in amount** of eligible creditors vote at the election; and (b) receives the vote of a majority **in amount** of claims held by creditors who vote.

(4) If a candidate is not elected, the interim trustee (appointed by the UST) becomes the trustee.

Federal Rule of Bankruptcy Procedure 2003(b)(3)[4] then addresses the right to vote. That Rule provides in part:

> Right to Vote. In a chapter 7 liquidation case, a creditor is entitled to vote . . . if, at or before the meeting, the creditor has filed a proof of claim . . . , unless objection is made to the claim or the proof of claim is insufficient on its face. . . . In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court.

---

[4] Future references to the Federal Rules of Bankruptcy Procedure in the text shall be referred to as "Rule__ ."

3

Finally, Rule 2003(d) addresses the report of election. Subsection (d)(2), report of disputed election, provides in part:

> (2) Disputed Election. If the election is disputed, the United States trustee shall promptly file a report stating that the election is disputed, informing the court of the nature of the dispute, and listing the name and address of any candidate elected under any alternative presented by the dispute. . . . Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. Unless a motion for the resolution of the dispute is filed no later than 14 days after the United States trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case.

## II.  Background Facts

The disputed elections for Chapter 7 Trustees were held at meeting of creditors in six related cases, which are presently being jointly administered, with Pinnacle Regional Hospital, Inc. as the lead case. The six cases are: Pinnacle Regional Hospital, Inc. ("Overland Park Hospital"); Pinnacle Regional Hospital, LLC ("Boonville Hospital"); Blue Valley Healthcare System, Inc. ("Blue Valley"); Pinnacle Healthcare System, Inc. ("Pinnacle Healthcare"); Rojana Realty Investments, Inc. ("Rojana"); and Joy's Majestic Paradise, Inc. ("Joy's").

4

On February 12, 2020, each of the six Debtors filed voluntary petitions under Chapter 11. An unsecured creditors' committee was formed.[5] The Debtors failed to undertake the obligations imposed upon Chapter 11 debtors-in-possession to administer the cases. The Bank filed an emergency motion for the appointment of a Chapter 11 Trustee.[6] After hearing, the motion was granted in part. James Overcash was appointed Chapter 11 Trustee in each case,[7] and the cases were ordered to be jointly administered (but not consolidated) with Overland Park Hospital as the lead case.[8] The Chapter 11 Trustee prepared and filed statements of financial affairs and schedules in each case, based upon information provided by the Debtors, or in the Rojana and Joy's cases, by management of the Debtors.[9]

The Chapter 11 bar date order, filed on June 8, 2020, provided that July 15, 2020, was the general bar date, subject to the exceptions provide by the Code and Rules.[10] On July 8, 2020, the Bank filed proofs claim in each of

---

[5] Doc. 79.

[6] Doc. 80.

[7] Docs. 85 and 173.

[8] Doc. 108.

[9] Docs. 153, 154, 157,158, 159, and 160.

[10] Doc. 307.

5

the six cases. On the same date, the unsecured creditors' committee filed an adversary proceeding against the Bank, primarily challenging the Bank's claims against Boonville Hospital, Rojana, and Joy's (the "Adversary Proceeding").[11] The committee also filed objections to the Bank's proofs of claim, incorporating the allegations of the adversary proceeding, noting a small discrepancy in the principal amount of a note and the amount claimed to be owed, and reserving the right to supplement the objections.[12]

On July 22, 2020, the Court entered an order converting Debtors' cases from Chapter 11 to Chapter 7, effective as of July 31, 2020.[13] This had the effect of dissolving the unsecured creditors' committee. The conversion order provided that all causes of action of the Debtors and their estates "shall vest in the Chapter 7 Trustee."[14] This included the Adversary Proceeding. The UST appointed Mr. Overcash as the Interim Chapter 7 Trustee, gave notice that there was no proof of claim deadline, and set September 3, 2020, as the date for the meeting of creditors.[15] The Court approved a stipulation between

---

[11] Adversary case no. 20-06025.

[12] Doc. 355.

[13] Doc. 385.

[14] *Id.*, 4.

[15] Doc. 404.

6

the Interim Chapter 7 Trustee and the Bank, in which, among other things, there was agreement that the objections to the Bank's proofs of claim in Overland Park Hospital, Blue Valley, and Pinnacle Healthcare would be withdrawn to the extent they included objections outside the scope of the Adversary Proceeding.[16]

Prior to the § 341 meeting of creditors scheduled for September 3, 2020, three creditors contacted the UST and asked for the election of a Chapter 7 Trustee at the meeting of creditors in two cases: Overland Park Hospital (requesting creditors Centinel Spine, LLC and Kimberly Phipps[17]) and Blue Valley (requesting creditor Collect Rx LLC). On September 3, 2020, the UST conducted the meetings of creditors and announced that all six cases would be continued to October 6, 2020. The UST then filed and served on all creditors a notice of the continued meetings.[18] The notice advised that at the continued meetings, at the request of certain creditors, an election for the person to serve as Chapter 7 Trustee would be held and that, in order to participate in

---

[16] Doc. 426-1.

[17] The UST reports that Kimberly Phipps requested an election in "Pinnacle Regional Hospital." Doc. 495, 4. Ms. Phipps filed a proof of claim in Overland Park Hospital, but not Boonville Hospital.

[18] Doc. 472.

the election, a creditor must file a proof of claim with the bankruptcy court and attend the meeting, in person or by proxy.

On October 5, 2020, the Bank filed amended proofs of claim in three cases, Overland Park Hospital, Blue Valley, and Pinnacle Healthcare. As a result, in the Overland Park Hospital case the Bank asserts a secured claim of $5,546,612.22 and an unsecured claim for $26,674,267.95.[19] In that case, the other unsecured creditors hold claims of approximately $6,000,000.[20] In the Blue Valley case, the Bank's secured claim is $2,476,244.22 and its unsecured claim is $27,754,096.50.[21] In that case, other unsecured creditors hold claims of approximately $1,500,000.[22] The Bank's claim in Boonville Hospital, which was not amended,[23] is a secured claim for $20,204,324.61.[24]

The elections were conducted at the October 6, 2020 continued meetings. Each of the three requesting creditors stated they continued to

---

[19] Case no. 20-20219, claim 57-3.

[20] Doc. 504, 8.

[21] Case no. 20-20222, claim 16-3.

[22] Doc. 504, 8.

[23] The Bank's claims in Rojana and Joy's were not amended. As originally filed, the Rojana claim is for $8,250,000.00 secured and $6,109,513.56 unsecured and in Joy's is for $6,162,000.00 secured and $8,197,513.56 unsecured.

[24] Case no. 20-20221, claim 27-1.

8

request elections. Also, five additional creditors attending the meeting requested elections, resulting in the inclusion of Boonville Hospital in the cases where an election was requested. Thus elections were requested in three of the six jointly administered cases. All of the creditors requesting elections nominated and voted for Larry Pittman, who had been counsel to the unsecured creditors' committee, to serve as Chapter 7 Trustee. The Bank, by not voting in favor of the election of Mr. Pittman, supported the appointment of the Interim Trustee, Mr. Overcash, as the Chapter 7 Trustee. The UST opened the meeting for parties to state objections, which included the Bank's contention that Mr. Pittman has a conflict of interest and creditor Centinel's contention that the Bank should not have the right to vote because it is a partially secured creditor and because it may have a materially adverse interest under § 702(a)(2). Voting then took place by written ballot. The meetings were adjourned until a date after a determination of who would serve as Trustee.

The UST filed his notice of disputed elections on October 19, 2020.[25] Its analysis of the elections makes the following three primary assumptions, each

[25] Doc. 495.

of which is being challenged in this proceeding.[26] First, that the universe of claims[27] of unsecured creditors, whose claims are used to calculate whether the 20% quorum requirement is satisfied and whether 20% of qualified unsecured creditors voted at the election, consists of allowable, undisputed, fixed, liquidated, non-priority unsecured proofs of claim filed with the Court before the election. Second, that the Bank filed a claim meeting those criteria in all cases except Boonville Hospital. Third, that Mr. Pittman appears to be eligible to serve as Chapter 7 Trustee.

Applying these criteria, the UST determined that there was no quorum in Overland Park Hospital and Blue Valley, such that Mr. Overcash, the Interim Trustee, should be deemed the Trustee. However, the UST found a quorum present in Boonville Hospital and that the requisite 20% in amount of the eligible unsecured creditors voted to elect Mr. Pittman as the Chapter 7 Trustee.[28]

---

[26] Additional assumptions relate to specific creditors and are not being challenged.

[27] "In the case law, the base amount of eligible claims entitled to vote is often referred to as the 'universe of claims.'" 6 *Collier on Bankruptcy* ¶ 702.03 (Richard Levin & Henry J. Sommer eds-in-chief, 16th ed 2020).

[28] The UST conducted elections in all six cases and found that there was not a quorum in three cases, Pinnacle Healthcare, Rojana, and Joy's, such that Mr. Overcash should become the permanent Trustee in these cases. Although Centinel's motion to resolve disputed election and the Bank's reply address these elections, during argument on the motion, all parties agreed that an election had been requested only

10

Creditor Centinel filed a timely motion for resolution of disputed election, the matter now before the Court.[29] Centinel's position is that the Bank's unsecured claims should not have been considered for purposes of establishing a quorum or voting, resulting in Mr. Pittman being elected in Overland Park Hospital, Blue Valley, and Boonville Hospital. First it argues that the relevant time for determining eligibility is September 3, 2020, the date originally scheduled for the 341 meeting, before the Bank filed its amended proofs of claim, rather than October 6, the date the election was conducted. Next, it argues that the Bank's claims are disputed and that the Bank has interests materially adverse to those of other unsecured creditors.

The Bank responded.[30] Its primary argument, which supports its position that the quorum requirement was not satisfied in any of the cases, is that the universe for identifying unsecured creditors potentially eligible to

in Overland Park Hospital, Blue Valley, and Boonville Hospital, such that these elections in the other three related cases should not have been conducted and the reported results should not be reviewed by the Court.

The UST also conducted an election in the six cases on a jointly administered basis and again found there was not a quorum. The Court will not review that election. Although there was no objection to conducting a joint election, there was not a request for such an election. Further, Rule 2009(b) provides: "Notwithstanding entry of an order for joint administration under Rule 1015(b), the creditors of any debtor may elect a separate trustee for the estate of the debtor as provided in § 702 of the Code, unless that case is under subchapter V of Chapter 7."

[29] Doc. 504.

[30] Doc. 524.

11

establish a quorum and to vote is determined not only by filed proofs of claim, but by the filed proofs of claim plus the unsecured creditors listed on the schedules, minus those listed claims superceded by filed proofs of claim. It also argues that the Bank does not have a materially adverse interest, except in the Boonville Hospital case, in which it did not assert a right to vote. Further, it argues that there was not a quorum in any case as of October 6 and that Mr. Pittman is not eligible to serve as a Chapter 7 Trustee because his law firm has a pending administrative claim.

Centinel replied.[31] It supports the UST's determination that the universe of unsecured creditors is those filing unsecured proofs of claim. It argues that the Bank's alternative, which relies on the schedules, should be rejected because the schedules are unreliable in this case. Further, Centinel submits that Mr. Pitman is not disqualified and, in any event, the law firm has agreed to withdraw its administrative claim.

## III.  Analysis

The challenge to disputed elections requires the Court to consider whether the elections of Chapter 7 Trustees in Overland Park Hospital, Blue

---

[31] Doc. 528.

Valley, and Boonville Hospital were properly conducted.[32] Centinel submits if properly conducted, Mr. Pitman would have been elected in Overland Park Hospital and Blue Valley, in addition to Boonville Hospital, because the Bank would have not been eligible to vote its unsecured claims, resulting in the remaining general unsecured creditors controlling the election outcomes. The Bank contends when the universe of potential voting creditors is properly defined, there was not a quorum in any case. The relevant issues are: (1) On what date should the universe of voters be determined; (2) how is the universe of voters defined; (3) does the Bank have a disqualifying adverse interest in Overland Park Hospital or Blue Valley; and (4) is Mr. Pittman disqualified.

### A. Voter eligibility is determined as of the date the elections were held.

Centinel argues that voter eligibility should be determined based upon the proofs of claim filed as of the date of the initial meeting of creditors, rather than the date the elections were held. Under this standard, since as of the earlier date the Bank had not filed its amended proofs of claim in Overland Park Hospital and Blue Valley, which amended claims stated

---

[32] As stated above, there was no request for elections in Pinnacle Healthcare, Rojana, or Joy's, so there was no reason for the UST to report these results.

liquidated unsecured claims, the Bank's claims would be excluded from consideration.

Centinel provides no authority to support its position. The limited authority which exists supports the UST's selection of the date the elections were held. Rule 2003 provides that "a creditor is entitled to vote at a meeting, if, at or before the meeting, the creditor has filed a proof of claim or writing setting forth facts evidencing a right to vote." When rejecting post election efforts to establish a right to vote of disputed claims, a court has stated, "[T]he proper time to compute the universe of voting creditors is at the time of an election."[33]

### B. The universe of eligible claims includes only those allowable, undisputed, fixed, liquidated, non-priority unsecured proofs of claim filed with the Court before the election.

Neither § 702 nor the Rules provides a clear method for calculating the universe of claims that are "allowable, undisputed, fixed, liquidated, and unsecured" entitled to a Chapter 7 distribution under the stated code sections. The UST limited the universe to filed proofs of claims, and Centinel supports this position. The Bank contends that the universe of claims should

---

[33] *In re Aspen Marine Group, Inc.*, 189 B.R. 859, 863 (Bankr. S.D. Fla. 1995); *see In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978, 982-83 (Bankr. S.D. Cal. 1996).

14

not include only filed proofs of claim but also those unsecured creditors listed on the schedules whose claims have not been replaced by filed proofs of claim.

There is no precedent in the Tenth Circuit, and other courts do not agree on how to proceed.[34] Generally, there are three approaches. First, some courts hold that the debtor's schedules control the universe of claims eligible to vote.[35] Second, other courts hold that the universe is determined solely by reference to filed proofs of claim.[36] Third, many courts define the universe by reference to the debtor's schedules *and* proofs of claim. For example, in *TBR USA*,[37] a case that had been converted from Chapter 11 to Chapter 7, the court held that the universe of creditors entitled to vote is limited to: (1) creditors who have filed unsecured claims which have neither been objected to prior to the time of the election and are not insufficient on their face; and (2) creditors who are excused from the requirement to file a proof of claim in the Chapter 11 case under Rule 3003(b)(1) because the claim was scheduled and not listed as disputed, contingent, or unliquidated.

---

[34] 6 *Collier on Bankruptcy* ¶702.03[1].

[35] *See In re Lindell Drop Forge Co.*, 111 B.R. 137, 145 (Bankr. W.D. Mich. 1990) (collecting cases).

[36] *In re Lake States Commodities, Inc.*, 173 B.R. 642, 649 (Bankr. N.D. Ill. 1994).

[37] *In re TBR USA, Inc.*, 429 B.R. 599, 616-617 (Bankr. N.D. Ind. 2010).

15

Both the first and third of the foregoing alternatives assume that the debtor's schedules are reliable. That assumption makes these alternatives inappropriate in the current cases.[38] The relevant schedules were prepared by the Chapter 11 Trustee and state they were "organized by the Trustee based upon information provided by the Debtors."[39] This statement alone evidences their unreliability. Contrary to usual practice, they were not filed under oath by Debtors. Further, throughout the early stages of these cases before the appointment of the Chapter 11 Trustee, the Court observed that Debtors were not properly concerned with participating in the bankruptcy proceedings. It therefore concludes that Debtors would not have been concerned about the accuracy of the information provided to the Chapter 11 Trustee.

Further, the filed schedules also state that "[m]uch of the information provided [by the Debtors to the Trustee] was done on an a consolidated basis with the other related Health Care Debtors."[40]  In other words, information was not accurately separated as to Debtor. This defect is vividly illustrated by Centinel's analysis of the Boonville Hospital scheduled unsecured claims

---

[38] *See In re Barkany*, 542 B.R. 662, 684 (Bankr. E.D.N.Y. 2015) (noting it had not adopted any of the three approaches, but finding that under the circumstances of the case would it rely exclusively on the proofs of claim because it could not rely on the accuracy of the debtor's schedules).

[39] Dec. 157, 1.

[40] *Id*.

showing that a significant number of creditors listed in the Boonville Hospital schedules, whose claims the Court has calculated to be scheduled in the approximate amount of $2,300,000, actually filed proofs of claims in one or more related cases, but not in Boonville. In addition, reliance on the proofs of claim in these cases in reasonable because, as observed by the UST, creditors were active in filing proofs of claim before the conversion to Chapter 7.

The Court therefore concludes that the universe of unsecured claims potentially eligible to be included in the calculation of the quorum and to cast votes was correctly determined to be those unsecured creditors who had filed "allowable, undisputed, fixed, liquidated, and unsecured" claims prior to the election.

C. **The Bank is not disqualified from voting in the Overland Park Hospital or the Blue Valley cases.**

Centinel argues that the Bank is disqualified from voting in the Overland Park Hospital and Blue Valley cases because its claims are disputed and because the Bank has interests materially adverse to the other general unsecured creditors. The Bank agrees that it has a materially adverse interest in Boonville Hospital and does not argue it is eligible for purposes of quorum calculation or voting in that case.

17

### 1. The Bank's claims are not disputed.

Centinel's motion argues that the Bank's claims on Overland Park Hospital and Blue Valley are disputed based upon: (1) the Adversary Proceeding; and (2) the unsecured creditors' committee's filing of an objection to the Bank's initial proofs of claims.[41]

There is close to no authority on what constitutes a disputed claim for purposes of voting. In dicta, the *TBR* court states "[if an objection to a claim has been filed, that claim cannot be counted among the ¶ 702(a)(1) claims."[42] The *Collier* treatise quotes the foregoing from *TBR* as a black letter position of law, but the *Norton* treatise takes a more nuanced approach, which this Court prefers, stating:

> Claims that are disputed are not counted, but the statute gives no guidance whether a mere objection to a proof of claim or writing suffices to render the claim disputed. Courts are likely to borrow from the well-developed case law surrounding the similar language in Code ¶ 303 (involuntary petitions), meaning that an affirmative showing will probably have to be made by the objecting creditor that the dispute is bona fide.[43]

---

[41] Doc. 355.

[42] *In re TBR USA*, Inc., 429 B.R. at 611.

[43] 4 William L. Norton and William L. Norton III, *Norton Bankruptcy Law & Practice* § 77:8 (Thompson Reuters 2020).

18

The Tenth Circuit has adopted the following standard under § 303: "We choose to adopt the standard propounded by the Seventh Circuit as to what constitutes a bona fide dispute: 'the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt.'"[44]

Under this standard, the Bank's claims are not disputed for purposes of § 702(a)(1). The Adversary Proceeding primarily challenges guaranties and security documents executed by Boonville Hospital and seeks determination of whether deeds of trust and mortgages executed by Joy's and Rojana extend to certain debts. In a single paragraph count, with no factual detail, the Adversary Complaint also challenges the effectiveness of Debtors' attempted assignments of bank accounts at institutions other than the Bank as additional security apparently by all debtors, including Overland Park Hospital and Blue Valley. But based upon references to monthly operating reports, the Bank has convincingly demonstrated that the balances in these accounts were $500 on the date of filing, a de minimus amount compared with the amount of the Bank's claims. Further, the Bank has stated it does not intend to pursue the assignments. The Court therefore finds that the Bank's

---

[44] *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543–44 (10th Cir. 1988) (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987))

19

claims are not disputed based upon the allegations of the Adversary Proceedings.

Likewise, the Bank's claims are not disputed for purposes of § 702(a)(1) based upon the unsecured creditors' committee's objection to claims. As stated above, in addition to incorporation of the claims of the Adversary Proceeding, the claims objections alleged a discrepancy in the principal amount of a note and the amount claimed to be owed and also reserved the right to supplement the objection. The claim objection was simply a protective filing to be certain that the right to object was not lost. But even these vague objections were withdrawn when the objection to the proofs of claim was partially withdrawn by agreement between the Bank and the Interim Chapter 7 Trustee.[45] After that, the Bank filed amended proofs of claims in both the Overland Park Hospital and Blue Valley cases. As of the date of the election, there were no pending objections to the Bank's claims, except those allowed in the Adversary Proceeding.

---

[45] Centinel suggests that the stipulation between the Bank and the Chapter 7 Interim Trustee partially withdrawing the objection to the proof of claim is suspect for lack of notice and opportunity to be heard. The Court is satisfied that this is a red herring. The motion to approve the stipulation was served on creditors, and a copy of the proposed order was attached. Further, even if the objection were not withdrawn, it did not create a bona fide dispute as to the validity of the Bank's claims.

20

### 2. The Bank does not have a materially adverse interest.

The second basis pressed by Centinel for disqualification of the Bank's claims is the argument that the Bank has interests that are materially adverse to the unsecured creditors. The *Collier* treatise states:

> The Code does not contain a definition of the phrase "interest materially adverse" as used in section 702(a)(2). Broadly speaking, a creditor's interest is materially adverse if, at the time of the election, it has "the prospective ability to enhance its recovery at the estate's expense." The date for determining whether a creditor holds a material adverse interest is the date of the election. In determining whether an interest is "materially adverse," a balancing of various factors is required, and the analysis is conducted on a case-by-case basis. These factors include the nature and size of the adverse interest and the degree to which it is adverse. . . . Parties challenging a creditor's eligibility to vote must interpose an objection that rises above "mere suspicion."[46]

The Court finds that the Adversary Complaint allegations in the Overland Park Hospital and Blue Valley cases do not give rise to disqualifying materially adverse interests. As analyzed above, the Adversary Complaint does not challenge the Bank's security interests in assets of these Debtors, except with to the perfection of an interest in accounts held at

---

[46] 6 *Collier on Bankruptcy* ¶ 702.03.

21

institutions other than the Bank. But the Bank is not pursuing this possible collateral and the allegations relate at best to a de minimus amount.

## IV. Mr. Pittman is not disqualified from serving as Chapter 7 Trustee

The Bank argues that Mr. Pittman is disqualified from serving as Chapter 7 Trustee because he is not disinterested. The allegation focuses on the fact that Mr. Pittman is a shareholder in a law firm which has asserted an administrative claim against Debtors in the amount of $27,654.37 for fees during the Chapter 11 case.[47] The UST rejected this objection, noting that under § 321(a), a person is eligible to serve as trustee in a Chapter 7 case if the individual is competent to perform the duties of trustee and reside or has an office in the judicial district within which the case is pending, or in any judicial district adjacent to such district. Unlike § 327, employment of professional persons, § 321 does not require that the trustee be disinterested. Nevertheless, counsel for Mr. Pittman's law firm has affirmed on the record that it will waive any unpaid Chapter 11 administrative expense claim.

## V. Conclusion

For the foregoing reasons, the Court finds that the UST election results should be confirmed. Eligibility of unsecured creditors to have their claims

---

[47] Doc. 433.

included in the quorum calculations and counted in the elections of the Chapter 7 Trustee was correctly determined as of the election date. The universe of potentially qualified unsecured creditors was correctly limited to those filing allowable, undisputed, fixed, and liquidated proofs of claim as of the election date, and should not be expanded to include claims included on Debtors' schedules for which proofs of claim were not filed. The Bank was not disqualified from voting its claims in the Overland Park Hospital and Blue Valley cases because its claims were not disputed for purposes of § 702(a)(1) and it did not have an interest materially adverse to the other unsecured creditors under § 702(a)(2). Accordingly, as to the Overland Park Hospital and Blue Valley cases, the Bank's unsecured claims were correctly included such that there was not a quorum for the election of a Chapter 7 Trustee, and the Interim Chapter 7 Trustee, James Overcash, should serve as Chapter 7 Trustee. As to the Boonville Hospital case, the UST correctly limited the universe of claims to filed proofs of claim. Accordingly, since the Bank did not participate because it agreed that it has a materially adverse interest because of the allegations of the Adversary Complaint, there was a quorum and Larry Pittman was duly elected as Chapter 7 Trustee by the unanimous vote of the qualified voters. Larry Pittman is not disqualified from serving as Chapter 7 Trustee.

Case 20-20219    Doc# 539    Filed 12/01/20    Page 23 of 24

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The judgment based on this ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**It is so ordered.**

**###**
