**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Case No. 20-20219** |
| **Pinnacle Regional Hospital, Inc., et al.,** | ) | **Chapter 7** |
| | ) | **(Jointly Administered)** |
| _____Debtors._____ | ) | |
| In Re: | ) | |
| | ) | **Case No. 20-20221** |
| **Pinnacle Regional Hospital, LLC,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |

**GREAT WESTERN BANK'S (I) NOTICE OF AMOUNT OF SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIM; AND, IF REQUIRED, (II) MOTION FOR
SUPERPRIORITY ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. §§ 503(b)
AND 507(b)**

NOW COMES Great Western Bank (the "Bank"), pursuant to Sections 503(b) and 507(b) and files this Notice ("Notice") of the amount of its superpriority administrative expense claim as granted by the cash collateral orders and trustee loan order described below, and to the extent required, requests that the Court confirm the amount of its superpriority administrative claim (the "Motion"). Bank asserts a lien on substantially all of the debtors' assets on the petition date and thereafter. The use of cash collateral diminished the Bank's collateral substantially throughout these cases. As a result, Bank is entitled to (i) a Chapter 11 administrative claim against Pinnacle Regional Hospital, Inc. ("Pinnacle Hospital OP") in the amount of $1,692,760; (ii) a Chapter 7 administrative claim against Pinnacle Hospital OP in the amount of $387,540; (iii) a Chapter 11 administrative against Blue Valley Surgical Associates, LLC ("BVSA") in the amount of $575,554; (iv) a Chapter 7 administrative claim against BVSA in the amount of $21,536; (v) a Chapter 11 administrative claim against Pinnacle Regional Hospital, LLC ("Pinnacle Hospital

WA 15237251.4

Boonville") in the amount of $3,527,746; and (vi) a Chapter 7 administrative claim against Pinnacle Hospital Boonville in the amount of $320,105. Additionally, $484,402 remains outstanding on a loan from the Bank to Pinnacle Health Care System, Inc, which is a claim against each Debtor's estate. The Bank has superpriority administrative expense claims in these amounts pursuant to the cash collateral orders. This Motion is supported by the record in this case and the following:

**Jurisdiction**

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§157 and 1334. This matter is a core proceeding under 28 U.S.C. §157(b). Venue is proper before this Court under 28 U.S.C. §§1408 and 1409.

**Background**

**I.     The Parties and the Loan Documents**

2.     Pinnacle Hospital OP operated a hospital located in Overland Park, Kansas that specialized in bariatric surgery and intervention services.

3.     BVSA operated clinics in Kansas and Missouri that offered pain management, surgical work-up and follow-up for bariatric, orthopedic and spinal patients.

4.     Pinnacle Hospital Boonville operated a hospital in Boonville, Missouri. Pinnacle Hospital Boonville ceased operating the hospital in January 2020.

**A.     Loans to Blue Valley Borrowers**

5.     Beginning in August 2017, the Bank made several loans (the "Blue Valley Loans") to Pinnacle Hospital OP, BVSA, and Blue Valley Health Care System, Inc. (collectively, the "Blue Valley Borrowers"). Specifically, the Bank made the following loans to the Blue Valley Borrowers:

2

a. On or about August 25, 2017, the Bank extended a line of credit (the "LOC") to the Blue Valley Borrowers in the original principal amount of $10,000,000, which was subsequently increased to $12,000,000;

b. On or about August 25, 2017, the Bank extended a loan ("5/7 Year Loan") to the Blue Valley Borrowers in the original principal amount of $1,805,000;

c. On or about August 25, 2017, the Bank extended a loan ("4 Year Loan") to the Blue Valley Borrowers in the original principal amount of $210,000;

d. On or about August 25, 2017, the Bank extended a loan ("5/8 Year Loan," and together with the LOC, the 5/7 Year Loan, and the 4 Year Loan, the "8/25/17 Loans") to the Blue Valley Borrowers in the original principal amount of $1,380,000;

e. On or about April 16, 2018, the Bank extended a loan ("4/16/18 Term Loan") to the Blue Valley Borrowers in the original principal amount of $669,000; and

f. On or about December 17, 2018, the Bank extended a loan ("12/17/18 Term Loan") to the Blue Valley Borrowers in the original principal amount of $1,768,800.

6. The Blue Valley Loans are evidenced by certain documents, including the following:

g. Promissory Note dated August 25, 2017 in the original principal amount of $10,000,000, which has been subsequently modified to $12,000,000;

h. Promissory Note dated August 25, 2017 in the original principal amount of $1,805,000;

i. Promissory Note dated August 25, 2017 in the original principal amount of $210,000;

j. Promissory Note dated August 25, 2017 in the original principal amount of $1,380,000;

k. Promissory Note dated April 16, 2018 in the original principal amount of $669,000;

l. Promissory Note dated December 17, 2018 in the original principal amount of $1,768,800;

m. Loan Agreement dated August 25, 2017;

3

WA 15237251.4

| | |
|---|---|
| n. | Loan Modification Agreement dated August 29, 2018; |
| o. | Second Loan Modification Agreement dated October 3, 2018; |
| p. | Third Loan Modification Agreement dated September 30, 2019; |
| q. | Security Agreement dated August 25, 2017; |
| r. | Loan Agreement dated April 16, 2018; |
| s. | Security Agreement dated April 16, 2018; and |
| t. | Security Agreement dated December 17, 2018. |

*See* Doc. 34-1; 34-2; 34-3; 34-4; 34-5; 34-6; 34-7; 34-8; 34-9; 34-10; 34-11; 34-12; 34-13; 34-14.

7.     On or about October 25, 2018, Pinnacle Hospital OP entered into a certain Business Purchasing Card Agreement & Setup form (the "Credit Card Agreement").

*See* Doc. 34-15.

8.     In exchange for the Credit Card Agreement and as evidenced therein, the Bank extended a credit card account to Pinnacle Hospital OP with a maximum credit limit of $2,000,000.00 (the "Credit Card").

9.     To secure the indebtedness they owe to the Bank, the Blue Valley Borrowers executed security agreements (collectively, the "OP Security Agreements") dated August 25, 2017, April 16, 2018, and December 17, 2018.

*See* Doc. 34-6; 34-12; 34-14.

10.     The OP Security Agreements conveyed a security interest in all of the Blue Valley Borrowers' personal property, including, but not limited to, accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by the Blue Valley Borrowers), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures. (collectively, the "OP Collateral").

4

WA 15237251.4

11.     The Bank has properly perfected its interest in the OP Collateral by filing a financing statement with the Kansas Secretary of State and having its lien noted on the titles of certain equipment.

*See* Doc. 34-31.

12.     The August 25, 2017 Blue Valley Borrower Loans were guaranteed by Pinnacle Health Care System, Inc. ("Pinnacle Health"), Pinnacle Hospital Boonville, and Douglas Palzer.

**A.     Loan to Pinnacle Health**

13.     On or about October 3, 2018, the Bank made a loan ("Pinnacle Health Loan," and together with the Blue Valley Loans, the "Loans") to Pinnacle Health in the original principal amount of $6,500,000.

14.     The Pinnacle Health Loan is evidenced by certain documents, including the following:

u.     Promissory Note dated October 3, 2018 in the original principal amount of $6,500,000;

v.     Loan Agreement dated October 3, 2018;

w.     Security Agreement dated October 3, 2018; and

x.     Deed of Trust dated October 3, 2018.

*See* Doc. 34-16; 34-17; 34-18; 34-19.

15.     The Pinnacle Health Loan was guaranteed by Pinnacle Hospital OP, BVSA, Blue Valley Health, Pinnacle Hospital Boonville, Joy's Majestic Paradise, Inc., Rojana Realty Investment, Inc., and Douglas Palzer.

*See* Docs. 34-20; 34-21; 34-22.

5

WA 15237251.4

16.     To secure the indebtedness to the Bank, Pinnacle Hospital Boonville executed a security agreement (the "Boonville Security Agreement") dated October 3, 2018, among other loan and security documents.

*See* Doc. 34-18.

17.     The Boonville Security Agreement conveyed a security interest in all of the Boonville Hospital's personal property, including, but not limited to, accounts, instruments, documents, chattel paper, general intangibles, including payment intangibles, contract rights, investment property (including any securities entitlements and/or securities accounts held by Pinnacle Hospital Boonville), securities and certificates of deposit, deposit accounts and letter of credit rights; inventory; furniture and equipment; and fixtures (collectively, the "Boonville Collateral").

18.     The Bank properly perfected its interest in the Boonville Collateral by filing a financing statement with the Delaware Secretary of State.

*See* Doc. 34-32.

19.     On or about October 3, 2018, Pinnacle Hospital Boonville executed a deed of trust, security agreement, assignment of leases and rents and fixture filing statement (the "Boonville Deed of Trust").

*See* Doc. 34-19.

20.     The Boonville Deed of Trust secures repayment of the Secured Indebtedness (as defined in the Boonville Deed of Trust) and conveyed an interest in certain real and personal property described in the Boonville Deed of Trust, including certain real property located in Cooper County, Missouri (the "Cooper County Property," and together with the OP Collateral and the Boonville Collateral, the "Collateral").

6

WA 15237251.4

21.     The Bank perfected its security interest in the Cooper County Property by recording the Boonville Deed of Trust with the Recorder of Deeds for Cooper County, Missouri. *See* Doc. 34-19.

## II.     The Debtors' Bankruptcy Filing

22.     On February 12, 2020, Pinnacle Hospital OP, BVSA, Pinnacle Hospital Boonville, Pinnacle Health, Joy's Majestic Paradise, Inc., and Rojana Realty Investment, Inc. each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

23.     On February 12, 2020, the Bank filed its Notice of Non-Consent to Unauthorized Use of Cash Collateral in Pinnacle Hospital OP, BVSA, Pinnacle Hospital Boonville, Joy's Majestic Paradise, Inc., and Rojana Realty Investment, Inc.'s cases. Doc. 9 in Case No. 20-20219; Doc. 8 in Case No. 20-20221; Doc. 8 in Case No. 20-20222; Doc. 5 in Case No. 20-20225; Doc. 5 in Case No. 20-20227

24.     On February 14, 2020, Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville (collectively, the "Health Care Debtors") each filed a Motion for Authorization to Use Operating Revenues and Request for Expedited Scheduling of Preliminary and Final Hearings. Doc. 12 in Case No. 20-20219; Doc. 12 in Case No. 20-20221; Doc. 11 in Case No. 20-20222.

25.     On February 28, 2020, the Court entered an Agreed Interim Order (I) Authorizing Use of Cash Collateral, (II) Authorizing Approval of Prepetition Payroll, and (III) Granting Adequate Protection in each of the OP, BVSA, and Pinnacle Hospital Boonville's cases (collectively, the "First Interim Orders"). Doc. 28 in Case No. 20-20219; Doc. 24 in  Case No. 20-20221; Doc. 25 in Case No. 20-20222.

26.     The First Interim Orders granted Pinnacle Hospital OP, BVSA, and Pinnacle Hospital Boonville limited authority to use its cash collateral.  The Bank was provided two forms

7

WA 15237251.4

of adequate protection in the First Interim Orders. First, the Bank was provided replacement liens in all of the Health Care Debtors' property. Second, the Bank was granted a superpriority claim under § 507(b) to the extent the replacement liens are insufficient to provide adequate protection against diminution in value of the Bank's security interests.

27.     On March 4, 2020, the Court entered an Agreed Second Interim Order (I) Authorizing the Use of Cash Collateral; and (II) Granting Adequate Protection in each of the Health Care Debtors' cases (collectively, the "Second Interim Orders"). In the Second Interim Orders, the Bank was again granted replacement liens and a superpriority claim under 11 U.S.C. § 507(b). In the Second Interim Order for Pinnacle Hospital Boonville, the Bank was also granted adequate protection in the form of payments in the amount of $274,048. Doc. 38 in Case No. 20-20219; Doc. 33 in  Case No. 20-20221; Doc. 34 in Case No. 20-20222.

28.     On March 27, 2020, the Court entered a Consolidated Third Interim Order Governing Debtors' Use of Cash Collateral and Granting Adequate Protection (collectively, the "Third Interim Orders") in each of the Health Care Debtors' cases. In the Third Interim Orders, the Bank was again granted replacement liens and a superpriority claim under 11 U.S.C. § 507(b). Doc. 68 in Case No. 20-20219.

29.     On or about April 1, 2020, the Court appointed James Overcash (the "Trustee Overcash") as the Chapter 11 Trustee of the Debtors' cases. Doc. 85.

30.     On April 7, 2020, the Court entered an Order Granting the motion for Joint Administration of Affiliated Chapter 11 Cases, ordering the joint administration of the Debtors' cases. Doc. 108.

31.     On April 18, 2020, Trustee Overcash filed his Emergency Motion to Approve Agreed Order Regarding Use of Cash Collateral and Adequate Protection. Also on April 18, 2020,

8

WA 15237251.4

Trustee Overcash filed his Motion for Authority to Obtain Post-Petition Financing Pursuant to § 364 and for Related Relief. Doc. 164; Doc. 166.

32.     On April 23, 2020, the Court entered an Agreed Interim Order Regarding use of Cash Collateral and Adequate Protection (the "Fourth Interim Order"). Doc. 190.In the Fourth Interim Order, the Bank was granted replacement liens and a superpriority claim under 11 U.S.C. § 507(b).

33.     Also on April 23, 2020, the Court entered a Stipulated and Interim Order (I) Authorizing Secured Post-Petition Financing on a Superpriority Basis Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363 and 364, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(C) (the "Trustee Loan Order"). Doc. 193.

34.     In the Trustee Loan Order, the Bank extended financing to Pinnacle Health (the "Trustee Loan"), which was secured by a senior lien on the Bank's collateral and a junior lien on encumbered collateral. Additionally, the Trustee Loan Order provided that the "Post-Petition Indebtedness shall constitute an allowed administrative expense of each of the Estates under § 503(b)(1) of the Bankruptcy Code," with superpriority status under 11 U.S.C. § 507(b) up to the loan amount. Trustee Loan Order at 11.

35.     On or about July 8, 2020, the Official Committee of Unsecured Creditors initiated an adversary proceeding (the "Adversary Proceeding") against the Bank challenging the Bank's security interest in Pinnacle Hospital Boonville's accounts receivable. Doc. 353.The claims sought herein for diminution in value against the Pinnacle Hospital OP estate and the BVSA estate are not affected by the Adversary Proceeding. The claims sought for diminution in value of the

WA 15237251.4

Pinnacle Hospital Boonville collateral and the Trustee Loan are connected to the Adversary Proceeding.

36.    On July 9, 2020, the Court entered a Final Order Regarding Use of Cash Collateral and Adequate Protection (the "Final Chapter 11 Cash Collateral Order"). Doc. 361. In the Final Chapter 11 Cash Collateral Order, the Bank was granted replacement liens, a superpriority claim, and adequate protection payments.

37.    On July 31, 2020 ("Conversion Date"), the cases were converted from Chapter 11 to Chapter 7. Doc. 385.

38.    Trustee Overcash served as the interim Chapter 7 Trustee of the Debtors upon conversion. Doc. 404.

39.    On September 10, 2020, the United States Trustee filed its Notice of Continued Meeting of Creditors and Election of Chapter 7 Trustee, notifying the parties that the United States Trustee would hold an election at the meeting of creditors on October 6, 2020 for a person to serve as trustee in the Debtors' cases. Doc. 472.

40.    On September 14, 2020, the Court entered an Agreed Order Regarding Use of Cash Collateral and Adequate Protection (the "Chapter 7 Cash Collateral Order"). Doc. 479. In the Chapter 7 Cash Collateral Order, the Bank was granted replacement liens, a superpriority claim, and adequate protection payments. The Chapter 7 Cash Collateral Order authorized the Trustee to use Cash Collateral until November 30, 2020, unless extended by agreement of the parties. The Trustee has not requested the use of Cash Collateral beyond November 30, 2020.

41.    On October 19, 2020, the United States Trustee filed a Notice of Disputed Election of Chapter 7 Trustee, notifying all parties that the election was disputed and that Trustee Overcash would continue as the interim trustee of the Debtors. Doc. 495.

10

WA 15237251.4

42.     On December 1, 2020, the Court entered its Memorandum Opinion and Judgment Ruling on Centinel Spine, LLC's Motion for Resolution of Chapter 7 Trustee Elections, declaring Trustee Overcash as the elected Chapter 7 trustee in each of the Debtors' bankruptcy cases, except for Pinnacle Hospital Boonville. Doc. 538.

43.     Larry Pittman ("Trustee Pittman") Pittman was elected as trustee of Pinnacle Hospital Boonville. Doc. 538.

44.     Under Bankruptcy Rule 1019, when a case is converted from Chapter 11 to Chapter 7, a request for payment of a pre-conversion administrative claim is timely if is filed before "a time fixed by the court." Fed. R. Bankr. P. 1019(6). Except for the deadline to file professional fee applications, the Court has not set a bar date for Chapter 11 administrative claims.

## Relief Requested

45.     To the extent that more than the Notice is required under the relevant orders, facts, and circumstances, the Bank respectfully requests that this Court enter an order confirming that the Bank has superpriority administrative claims under Sections 503(b) and 507(b) as follows:

| Debtor(s) | Amount | Basis |
|---|---|---|
| Pinnacle Hospital OP | $1,692,760 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 11 Case |
| Pinnacle Hospital OP | $387,540 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 7 Case |
| BVSA | $575,554 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 11 Case |
| BVSA | $21,536 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 7 Case |

11

WA 15237251.4

| Pinnacle Hospital Boonville | $3,528,746 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 11 Case |
| Pinnacle Hospital Boonville | $320,105 | Diminution in Value of Collateral from Cash Collateral Usage in Chapter 7 Case |
| All Debtors | $484,404 | Unpaid Trustee Loan Balance |

### Basis for Relief

## I.   Administrative Claim for Trustee Loan

46.     Under the Trustee Loan Order, Bank agreed to extend post-petition financing to Pinnacle Health in an amount not to exceed $800,000. One of the terms for the post-petition financing was that Bank would receive a payment of $800,000 from Pinnacle Hospital Boonville. However, rather than having Pinnacle Hospital Boonville transfer cash to Bank, and then Bank re-advancing cash to Pinnacle Health, Bank authorized the Trustee to transfer cash from Pinnacle Hospital Boonville to Pinnacle Health as a post-petition loan from the Bank to Pinnacle Health. Trustee Loan Order at 7–9.

47.     According to information provided by the Trustee Overcash, Trustee Overcash transferred the amounts in the below chart from Pinnacle Hospital Boonville to Pinnacle Health to pay non-Pinnacle Hospital Boonville Expenses. Under the Final Chapter 11 Cash Collateral Order and the Chapter 7 Cash Collateral Order, Trustee Overcash made adequate protection payments to Bank. In Trustee Overcash's accounting, he credited these adequate protection payments against the Trustee Loan amount.

| | Cash Transferred | Less Pinnacle Hospital Boonville Expenses | Less Bank Payment | Trustee Loan Balance |
|---|---|---|---|---|
| April 2020 | $568,567 | $170,075 | N/A | |
| May 2020 | $1,274 | $182,142 | N/A | |
| June 2020 | $679,463 | $255,126 | N/A | |

12

WA 15237251.4

| | | | | |
|---|---|---|---|---|
| July 2020 | $496,417.50 | $219,030 | $203,176 | |
| August 2020 | $10 | $98,322 | $279,103 | |
| September 2020 | $331,408.50 | $84,764 | $53,293 | |
| October 2020 | $110,685 | $59,425 | $110,506 | |
| November 2020 | $89,135 | $77,594 | N/A | |
| TOTAL | $2,276,960 | $1,146,478 | $646,078 | **$484,404** |

*See* Exhibit A (Trustee's Loan Amount Reporting through September 2020); Exhibit B (Trustee's Loan Amount Report for October 2020); Exhibit C (Trustee's Loan Amount Report for November 2020).

48.    The Trustee Loan Order provided that the Post-Petition Financing would be an administrative claim with superpriority status against each Debtors' estate.

49.    When examining total cash transferred from Pinnacle Hospital Boonville to Pinnacle Health, minus Boonville related expense and amounts paid to the Bank, the outstanding amount of the Trustee Loan is $484,404,[1] and Bank has an administrative claim against each Debtor in that amount.

50.    If Trustee Pittman prevails in the Adversary Proceeding, it could impact the Bank's ability to obtain a superpriority claim based on the Trustee Loan. The Bank disputes the allegations of the Adversary Proceeding.  Notwithstanding the status of the dispute between the Bank and Trustee Pittman in the Adversary Proceeding, the Bank respectfully suggests that the Court should

---

[1] Trustee Overcash's records indicate the Trustee Loan balance is $431,109, but this amount appears to be in error. The dollar amounts for the transfers, the Pinnacle Hospital Boonville expenses, and the Bank payments all come from Trustee Overcash's reporting. The Trustee's Loan Report through September 2020 (Exhibit A) lists a balance of $421,602. The October 2020 Report (Exhibit B) lists an October loan balance of $51,260, which would make the total loan balance $472,862 at the end of October 2020, but the October 2020 Report lists a balance of $419,568. This $51,260 difference continues in the November 2020 Report (Exhibit C).  It also appears that the September Bank payment is credited both in Exhibit A and Exhibit B.

13

WA 15237251.4

determine the amount of Bank's superpriority claims with regard to Boonville Hospital in conjunction with this Motion and order that any determination of such claims may be subject to disallowance if the Court invalidates the Bank's liens in connection with the Adversary Proceeding, depending upon the extent and scope of such invalidation and the rights of the Bank upon such invalidation.

## II.     Chapter 11 Diminution in Value Claims

51.     Prior to the Conversion Date, the Health Care Debtors sought the use of Cash Collateral. The First Interim Orders, Second Interim Orders, Third Interim Orders, Fourth Interim Order, and Final Order provided the Bank with replacement liens on the Health Care Debtors' property.

52.     To the extent the replacement liens proved to be inadequate to protect the Bank from a diminution in value of its collateral position from the Petition Date, the Bank was granted an administrative expense claim with priority in payment under Section 507(b) over any and all administrative expense claims. The replacement liens proved to be inadequate.

53.     Pinnacle Hospital Boonville ceased operations pre-petition. Given its closed status, none of the proceeds of the accounts receivables were replaced with new accounts receivables. On or about April 10, 2020, Trustee Overcash determined that the business operations of the other Health Care Debtors could not continue. On April 29, 2020, Trustee Overcash filed an Emergency Motion to Authorize Execution of Referral and Professional Services Agreement, which the Court approved on April 30, 2020. Accordingly, Pinnacle Hospital OP and BVSA have not generated new receivables since approximately April 30, 2020.

54.     The Debtors reported the following cash balances as of the Petition Date:

a.      Pinnacle Hospital Boonville: $500

b.      Pinnacle Hospital OP: $500

14

WA 15237251.4

        c.      BVSA: $500

*See* Schedules of Debtor Pinnacle Regional Hospital, Inc. [Doc. 157] at 10; Schedules of Debtor

Blue Valley Surgical Associate, LLC [Doc. 158] at 10; Schedules of Debtor Pinnacle Regional

Hospital, LLC [Doc. 159 at 10]; *see also See* Exhibit D (February Monthly Operating Report) at

3 (listing beginning cash balances of $500);

      55.     According to the reporting by Trustee Overcash, the summary of accounts

receivables collections during the Chapter 11 cases is as follows:

|  | Pinnacle Hospital Boonville | Pinnacle Hospital OP | BVSA | **Total** |
|---|---|---|---|---|
| February[2] | $1,045,808 | $69,683 | $167,164 | $1,246,922 |
| March | $2,225,768 | $140,996 | $156,563 | $2,522,326 |
| April | $367,878 | $461,132 | $131,628 | $900,356 |
| May | $231,869 | $632,173 | $85,845 | $949,887 |
| June | $417,828 | $261,573 | $98,048 | $777,449 |
| July | $524,255 | $303,229 | $43,529 | $871,013 |
| **TOTAL** | **$4,812,905** | **$1,868,786** | **$582,292** | **$7,267,953** |

*See* Exhibit D (February Monthly Operating Report); Exhibit E (March Monthly Operating

Report); Exhibit F (April Monthly Operating Report); Exhibit G (May Monthly Operating Report);

Exhibit H (June Monthly Operating Report): Exhibit I (Trustee's Accounts Receivable Reporting).

      56.     Trustee Overcash has represented that the Health Care Debtors' cash balance as of

July 31, 2020 was a follows:

        a. Pinnacle Hospital Boonville: $365,310

        b. Pinnacle Hospital OP: $176,526

        c. BVSA: $7,238

*See* Exhibit J.

---

[2] Trustee Overcashs's reports list the collections by week. The collections for February list the collections beginning the week of February 10, 2020.

WA 15237251.4

57.     In addition to the adequate protection payments that Trustee Overcash applied against the Trustee Loan, the Bank received the following adequate protection payments from the Chapter 11 estate: $274,048 from Pinnacle Hospital Boonville under the Second Interim Cash Collateral Order.

58.     Bank is entitled to administrative expense claims for the diminution in the value of its collateral. *See In re Scopac*, 624 F.3d 274, 282 (5th Cir. 2010) ("Section 507(b) of the Bankruptcy Code allows an administrative expense claim under § 503(b) where adequate protection payments prove insufficient to compensate a secured creditor for the diminution in the value of its collateral."); *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998) ("In essence, § 507(b) means that a secured creditor has superpriority for a claim in the amount that the debtor's use of the collateral during the time of the stay diminished the value of the collateral, but only to the extent such diminution is in excess of the adequate protection."); *In re Carpet Ctr. Leasing Co., Inc.*, 4 F.3d 940, 941 (11th Cir. 1993) ("Section 507(b) thus implies that an administrative expense claim under § 503(b) will be allowed where adequate protection payments prove insufficient to compensate a secured creditor for the diminution in value of its collateral.").

A.     **Pinnacle Hospital Boonville**

59.     The total amount of Bank's Pinnacle Hospital Boonville Cash Collateral that was utilized during the Chapter 11 cases was $4,448,095 (calculated as: total receivables collected $4,812,905 + cash on hand at petition date $500 – remaining cash on hand $365,310). Of that amount, $919,349 is already included in the Trustee Loan balance calculation.[3] Bank also received an adequate protection payment of $274,048 under the Second Interim Cash Collateral Order. All

---

3 The transfers from Pinnacle Hospital Boonville to Pinnacle Health for April through July total $1,745,722. The total of the Pinnacle Hospital Boonville expenses for April through July is $826,373, leaving transfers of $919,349 for non-Pinnacle Hospital Boonville expenses during the Chapter 11 cases.

WA 15237251.4

other adequate protection payments have been accounted for in the Trustee Loan balance calculation.

60.     Pinnacle Hospital Boonville did not generate any receivables post-petition, and the replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in Pinnacle Hospital Boonville's Cash Collateral.

61.     The Bank is therefore entitled to a Chapter 11 administrative claim against Pinnacle Hospital Boonville for the diminution in value of its collateral in the amount of $3,528,746 (calculated as: the subtotal of cash collateral utilized in Chapter 11 $4,448,095 – amounts already accounted for above in the Trustee Loan balance calculation $919,349), in addition to the administrative claim owed in connection with the Trustee Loan.

62.     If Trustee Pittman prevails in the Adversary Proceeding, it could affect the Bank's ability to obtain a superpriority claim based on the diminution of the Pinnacle Hospital Boonville collateral. The Bank disputes the allegations of the Adversary Proceeding.  Again, however, the Bank respectfully suggests that the Court should determine the amount of Bank's superpriority claims with regard to Boonville Hospital in conjunction with this Motion and order that any determination of such claims may be subject to disallowance if the Court invalidates the Bank's liens in connection with the Adversary Proceeding, depending upon the extend and scope of such invalidation and the rights of the Bank upon such invalidation.

    **B.      Pinnacle Hospital OP**

63.     The total amount of Bank's Pinnacle Hospital OP Cash Collateral that was utilized during the Chapter 11 cases was $1,692,760 (calculated as: total receivables collected $1,868,786 + cash on hand at petition date $500 - remaining cash on hand $176,526). Any adequate protection payments have been accounted for in the Trustee Loan balance calculation.

17

WA 15237251.4

64.     Based on available information, Pinnacle Hospital OP generated little to no receivables between the Petition Date and April 30, 2020, and did not generate any receivables after April 30, 2020. The replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in Pinnacle Hospital OP's Cash Collateral.

65.     The Bank is therefore entitled to a Chapter 11 administrative claim against Pinnacle Hospital OP in the amount of $1,692,760, in addition to the administrative claim owed in connection with the Trustee Loan.

66.     The Adversary Proceeding does not affect the Bank's claim against the Pinnacle Hospital OP estate.

**C.     BVSA**

67.     The total amount of Bank's BVSA Cash Collateral that was utilized during the Chapter 11 cases was $575,554 (calculated as: total receivables collected $582,292 + cash on hand at petition date $500 - remaining cash on hand $7,238). Any adequate protection payments have been accounted for in the Trustee Loan balance calculation.

68.     Based on available information, BVSA generated little to no receivables between the Petition Date and April 30, 2020, and did not generate any receivables after April 30, 2020. The replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in BVSA's Cash Collateral.

69.     The Bank is therefore entitled to a Chapter 11 administrative claim against BVSA in the amount of $575,554, in addition to the administrative claim owed in connection with the Trustee Loan.

70.     The Adversary Proceeding does not affect the claim against BVSA estate.

WA 15237251.4

## III.    Chapter 7 Administrative Claims

71.    After the Conversion Date, the Health Care Debtors sought the use of Cash Collateral. The Chapter 7 Cash Collateral Order provided the Bank with replacement liens on the Health Care Debtors' property.

72.    To the extent the replacement liens proved to be inadequate to protect the Bank from a diminution in value of its collateral position, the Bank was granted an administrative expense claim with priority in payment under Section 507(b) over any and all administrative expense claims. The replacement liens proved to be inadequate.

73.    None of the Health Care Debtors generated any accounts receivables following the Conversion Date.

74.    According to information provided by Trustee Overcash, the Health Care Debtors have collected the following amounts post-Conversion Date:

|            | Pinnacle Hospital Boonville | Pinnacle Hospital OP | BVSA | **Total** |
|------------|-----------------------------|----------------------|----------|-----------|
| August     | $111,315 | $172,310 | $2,723 | $286,348 |
| September  | $148,849 | $204,978 | $7,850 | $361,677 |
| October    | $44,067  | $43,510  | $8,618 | $96,195  |
| November   | $82,517  | $14,618  | $3,912 | $101,047 |
| **TOTAL**  | **$386,748** | **$435,416** | **$23,104** | **$845,268** |

Exhibit I.

75.    As stated above, Trustee Overcash has represented that the Health Care Debtors' cash balance as of July 31, 2020 was a follows:

        a.    Pinnacle Hospital Boonville: $365,310

        b.    Pinnacle Hospital OP: $176,526

        c.    BVSA: $7,238

Exhibit J.

19

WA 15237251.4

76.     Trustee Overcash has represented that the balance of the Health Care Debtors' cash as of November 30, 2020 was as follows:

      a.      Pinnacle Hospital Boonville: $220,820

      b.      Pinnacle Hospital OP: $224,402

      c.      BVSA: $8,805

Exhibit K.

### A.     Pinnacle Hospital Boonville

77.     The total amount of Bank's Pinnacle Hospital Boonville Cash Collateral that was utilized during the Chapter 7 cases through November 30, 2020 was $531,238 (calculated as total collected post-conversion $386,748 + cash on hand as of July 31, 2020 $365,310 – cash on hand as of November 30, 2020 $220,820). Of that amount, $211,134 is already included in the Trustee Loan balance calculation.[4]  Any adequate protection payments have been accounted for in the Trustee Loan balance calculation.

78.     Pinnacle Hospital Boonville did not generate any receivables post-Conversion Date, and the replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in Pinnacle Hospital Boonville's Cash Collateral.

79.     The Bank is entitled to a Chapter 7 administrative claim against Pinnacle Hospital Boonville in the amount of $320,105 through November 30, 2020, in addition to the administrative claim owed in connection with the Trustee Loan (calculated as total cash collateral utilized during Chapter 7 case $531,238 – amounts already accounted for in Trustee Loan $211,134). The Bank reserves its right to seek a claim for any diminution in value that it discovers for the period after November 30, 2020.

---

4 The transfers from Pinnacle Hospital Boonville to Pinnacle Health for August through November total $531,239. The total of the Pinnacle Hospital Boonville expenses for August through November is $320,105, leaving transfers of $211,134 for non-Pinnacle Hospital Boonville expenses during the Chapter 7 cases through November 30, 2020.

WA 15237251.4

80.     As stated above, the Bank's security interest in Pinnacle Hospital Boonville's accounts receivable is being challenged in the Adversary Proceeding. The Bank disputes the allegations asserted in the Adversary Proceeding.

**B.      Pinnacle Hospital OP**

81.     The total amount of Bank's Pinnacle Hospital OP Cash Collateral that was utilized during the Chapter 7 cases through November 30, 2020, was $387,540 (calculated as total collected post-conversion $435,416 + cash on hand as of July 31, 2020 $176,526 - cash on hand as of November 30, 2020 $224,402). Any adequate protection payments have been accounted for in the Trustee Loan balance calculation.

82.     Pinnacle Hospital OP did not generate any receivables after the Conversion Date, and the replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in Pinnacle Hospital OP's Cash Collateral.

83.     The Bank is entitled to a Chapter 7 administrative claim against Pinnacle Hospital OP in the amount of $387,540, in addition to the administrative claim owed in connection with the Trustee Loan. The Bank reserves its right to seek a claim for any diminution in value that it discovers for the period after November 30, 2020.

84.     The Adversary Proceeding does not affect this claim.

**C.      BVSA**

85.     The total amount of Bank's BVSA Cash Collateral that was utilized during the Chapter 7 case through November 30, 2020 was $21,536 (calculated as total collected post-conversion $23,103 + cash on hand as of July 31, 2020 $7,238 - cash on hand as of November 30, 2020 $8,805). Any adequate protection payments have been accounted for in the Trustee Loan balance calculation.

WA 15237251.4

86.     BVSA did not generate any receivables after the Conversion Date, and the replacement liens and adequate protection payments granted to Bank did not adequately protect its interest in BVSA's Cash Collateral.

87.     The Bank is entitled to a Chapter 7 administrative claim against BVSA in the amount of $21,536, in addition to the administrative claim owed in connection with the Trustee Loan. The Bank reserves its right to seek a claim for any diminution in value that it discovers for the period after November 30, 2020.

88.     The Adversary Proceeding does not affect this claim.

WHEREFORE, the Bank respectfully requests the Court enter an order:

    a.      confirming the Bank's superpriority administrative claim of $484,404 against all Debtors for the Trustee Loan;

    b.      granting Bank a Chapter 11 administrative expense claim of $3,528,746 against Pinnacle Hospital Boonville for diminution in value of collateral;

    c.      granting Bank a Chapter 11 administrative expense claim of $1,692,760 against Pinnacle Hospital OP for diminution in value of collateral;

    d.      granting Bank a Chapter 11 administrative expense claim of $575,554 against BVSA for diminution in value if collateral;

    e.      granting Bank a Chapter 7 administrative expense claim of $320,105 against Pinnacle Hospital Boonville for diminution in value of collateral;

    f.      granting Bank a Chapter 7 administrative expense claim of $387,540 against Pinnacle Hospital OP for diminution in value of collateral;

    g.      granting Bank a Chapter 7 administrative expense claim of $21,536 against BVSA for diminution in value of collateral; and

    h.      granting such other and further relief as the Court deems just and proper.

WA 15237251.4

Respectfully submitted,

SPENCER FANE LLP

_____/s/ Peter L. Riggs_____
Peter L. Riggs       KS #23523
Andrea M. Chase    KS #26307
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
priggs@spencerfane.com
achase@spencerfane.com

and

James A. Lodoen (0173605) *Admitted pro hac vice*
100 South 5th Street, Suite 2500
Minneapolis, Minnesota  55402
Phone:  (612) 268-7000
Facsimile:  (612) 268-7001
Email: jlodoen@spenerfane.com

ATTORNEYS TO
GREAT WESTERN BANK

23

WA 15237251.4

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2021, the above and foregoing was served via electronic filing to all parties requesting/receiving electronic notice in this case.


/s/ Peter L. Riggs
An Attorney for Great Western Bank

24

WA 15237251.4